[Civ. No. 34355. Second Dist., Div. Four. Feb. 24, 1970.]

ROBERT WEISS et al., Cross-complainants and Appellants, v. BRENTWOOD SAVINGS AND LOAN ASSOCIATION, Cross-defendant and Respondent.

## Counsel

David S. Smith and Sidney Broffman for Cross-complainants and Appellants.

David K. Golding and C. Fred Cassity for Cross-defendant and Respondent.

## Opinion

**DUNN, J.**—There are two appeals before us and we will first discuss the appeal of Robert and Lillian Weiss in their capacities as cross-complainants.

### Appeal of Weiss

As gleaned from the clerk's partial transcript constituting the record on this appeal, the dispute arises from the following circumstances: Robert and Lillian Weiss, husband and wife, owned four lots. They sold these to Joseph Asher through an escrow requiring payment of cash to the sellers together with Asher's execution of separate notes secured by purchase-money trust deeds for the remainder of the purchase price due on each lot. The trust deeds were to be subordinated to loans thereafter to be obtained by Asher. Asher arranged to borrow $158,000 from Brentwood Savings and Loan Association secured by notes and trust deeds on each lot, each being senior to those subordinated. Brentwood actually disbursed $148,061.38 at Asher's request, retaining $9,938.62 undisbursed.

The legal phase of the dispute began when Wilshire National Bank filed a complaint[1] naming Brentwood as defendant. Robert and Lillian Wiess, through some method unexplained by the record, filed a cross-complaint framed in four causes of action naming Brentwood, among others, as a cross-defendant. The first cause of action sought $9,938.62 (being the undisbursed money) under a common count for money. Brentwood, apparently by interpleader procedures, deposited that sum with the court and the first cause of action is not involved in the Weiss' appeal.

The second, third and fourth causes of action of appellants' cross-complaint are based upon the subordination agreement made a part of the Weiss-Asher escrow and repeated in clauses in their trust deeds. In part, this reads: "This deed of trust . . . is hereby made subject and subordinate to a deed of trust to be hereafter executed by the trustors . . . . From and after the recordation of such deed of trust to which this deed of trust is

---

[1]Neither this complaint nor any pleading responsive to it is in the record before us.

hereby made subject and subordinate as above provided, such hereafter executed deed of trust shall at all times . . . constitute a lien or charge on said land prior and superior to the lien or charge of this deed of trust as to any and all loans or advances which shall be made under such hereafter executed deed of trust . . . *and without regard to the application or use of the proceeds of such loan or advances insofar as the validity of this subordination is concerned.* [Italics added.]

"After completion of the improvements on said land, as evidenced by a recorded notice thereof, a new deed of trust may be placed thereon . . . which new deed of trust . . . shall constitute a lien or charge on said land prior and superior to the lien or charge of this deed of trust . . . .

*"Beneficiary declares and acknowledges . . . that he understands that in reliance upon, and in consideration of, this waiver, relinquishment and subordination, specific loans and advances will be made . . . by third parties which would not be made or entered into but for said reliance upon this waiver, relinquishment and subordination."* [Italics added.][2]

In the second cause of action appellants allege that Asher orally represented to them that all money obtained would be used for constructing a residence upon each lot, that the money would be reasonable as to construction costs and that Brentwood would supervise the expenditures to insure proper use of the funds. It is further alleged that a Brentwood representative orally informed appellants that Brentwood would so supervise. Appellants allege they agreed to subordinate[3] their trust deeds in reliance upon these oral representations. Thereafter, Brentwood advanced money to Asher for construction at the rate of $15 per square foot but, according to the plans and specifications, the reasonable cost and value of construction was only $10 per square foot and Brentwood permitted Asher to use the excess for purposes other than construction. The lots were thereby surcharged with an over-loan of $54,000 not reflected in the enhanced value of the security brought about by the constructed improvements. Appellants seek both compensatory and punitive damage, claiming Brentwood's conduct was fraudulent and malicious.

The third cause of action nearly duplicates the second, but alleges Brentwood was negligent in failing carefully to supervise use of the loan proceeds. The fourth cause of action differs materially only in its allega-

---

[2]It bears mentioning that the subordination agreement and the trust deeds with their subordinating clauses all were executed long before the Civil Code was amended by adding, effective January 2, 1964, sections 2953.1 to 2953.5, inclusive, of which section 2953.4 subdivision (a) specifically states their effect upon subordination clauses or agreements executed after the effective date of the amendments.

[3]The record indicates the Brentwood trust deeds actually were recorded before appellants' trust deeds and thus may be entitled to priority under Civil Code, section 1213 et seq. and section 2952. However, any issue based upon such fact is eliminated by the Joint Pretrial Statement of the parties.

tions that a conspiracy between Brentwood and Asher was formed to induce appellants to subordinate the trust deeds.

Before trial, Brentwood filed a motion for a partial summary judgment in its favor as to all sums in excess of the money deposited, as claimed by the Weiss' in the second, third and fourth causes of action of their cross-complaint. That motion was granted, it being ordered that such claims be severed, the action to proceed for a determination of the various parties' rights in the sum deposited with the court. The court further specified that its order would become part of any final judgment in the case.[4]

The action went to nonjury trial, resulting in a judgment awarding Robert and Lillian Weiss $9,418.83 against Brentwood and awarding $519.79 to Edward Puskin,[5] making a total money judgment of $9,938.62 which equalled the amount on deposit. Judgment was in Brentwood's favor as to all other of the numerous party claimants. The formal judgment incorporated the court's prior ruling regarding summary judgment and it is from that part of the judgment, only, that this appeal is taken.

In support of its motion for summary judgment, a declaration filed by respondent Brentwood recites testimony given by Robert Weiss in a deposition, wherein he admitted that he had spoken to no one at Brentwood before the close of escrow and, indeed, first spoke to someone there only after receiving notice from Brentwood that Asher was in default on the senior encumbrances held by Brentwood. At that time, construction on the lots was 97 percent completed. No one at Brentwood ever told him that Brentwood would supervise the construction on the lots. "They didn't say this, nor were they asked."

### Second Cause of Action—Misrepresentation

Nowhere in the five declarations appellants filed in opposition to the motion do they contest respondent's declaration. While it may be that Asher made the misrepresentations alleged, and that they were relied on by appellants, it was not alleged that Asher did so as agent of respondent. Thus, it is established without dispute that Brentwood made no oral representations or misrepresentations to the Weiss', on which they relied or otherwise.

---

[4]Code of Civil Procedure, section 437c deals with summary judgment and in part states: "If it appear . . . that a good cause of action does not exist as to a part of the plaintiff's claim . . . the court shall, by order, so declare . . . and the cause of action may be severed accordingly, and the action may proceed as to the issues remaining between the parties. No judgment shall be entered prior to the termination of such action but the judgment in such action shall, in addition to any matters determined in such action, award judgment as established by the proceedings herein provided for."

[5]Puskin's appeal from this judgment, awarded to him on his own cross-complaint, is the second appeal previously mentioned and is dealt with separately herein.

In their briefs, appellants depart from their allegation that respondent made oral misrepresentations, and seek to hold respondent liable on another theory. This seems to be that respondent supplied the written language used in the Weiss-Asher escrow, that such language inferentially required all proceeds of forthcoming loans to be devoted exclusively to constructing improvements, and that appellants relied on such inferred terms in subordinating their own security.

The second paragraph of the subordination begins, "After completion of the improvements on said land . . . a new deed of trust may be placed thereon . . . ." Appellants seize upon the term "improvements" as indicating the parties' intention that all sums provided for in the first paragraph should be devoted to construction. While the quoted phrase may indicate that the parties planned for improvements to be constructed on the properties, it nowhere indicates what portion of the anticipated loans would be so used nor does it require the lender, in contradiction or modification of the express terms of the first paragraph, to monitor use of the funds for that purpose. Thus, it is the meaning the language conveyed to the prospective lender with which we are concerned and not the significance attached to it by appellants.

Aside from the deficiency just noted and the failure to plead such theory, other shortcomings in it are insuperable. First, since Brentwood was not a party to the Weiss-Asher escrow, the language used by them was that, irrespective of its source, chosen or adopted by the parties, who were free to express themselves as they saw fit. Second, Robert Weiss' declarations as to the claimed source of the language are ineffectual. Thus, he states: "Declarant was informed in said Escrow proceedings that . . . BRENTWOOD desired a Subordination Clause," which is pure hearsay as it stands and would be inadmissible as evidence at a trial. In another declaration subsequently filed, he baldly states "said subordination agreements were prepared by BRENTWOOD," but in the light of the record before us this is, at best, a conclusion based upon inadmissible hearsay.

Third, the language used in the escrow agreement and repeated in the trust deeds provides for subordination ". . . without regard to the application or use of the proceeds of such loans or advances insofar as the validity of this subordination is concerned." This language, plus other differences of both substance and procedure, clearly distinguish the agreement from *Handy* v. *Gordon* (1967) 65 Cal.2d 578 [55 Cal.Rptr. 769, 422 P.2d 329, 26 A.L.R.3d 848]; *Miller* v. *Citizens Sav. & Loan Assn.* (1967) 248 Cal. App.2d 655 [56 Cal.Rptr. 844]; *Joanaco Projects, Inc.* v. *Nixon & Tierney Constr. Co.* (1967) 248 Cal.App.2d 821 [57 Cal.Rptr. 48], and other cases relied upon by appellants.

Fourth, appellants further rely upon the five declarations of Robert Weiss wherein he avers that he "believed" the loans by Brentwood were to be used for construction on the lots and "believed" Brentwood would supervise such use. It is not alleged any of these "beliefs" were communicated to respondent or, indeed, to anyone. We have found no authority holding that the unexpressed, uncommunicated intent or belief of one party is relevant to establish intent even as between parties to an agreement, let alone as to third parties such as Brentwood. To the contrary, it is invariably held that a party may not show that his undisclosed intention was contrary to the words used in the agreement. *Houghton* v. *Kerr Glass Mfg. Corp.* (1968) 261 Cal.App.2d 530, 537-538 [68 Cal.Rptr. 43]; *Wm. E. Doud & Co.* v. *Smith* (1967) 256 Cal.App.2d 552, 558 [64 Cal.Rptr. 222].

We affirm that portion of the summary judgment relating to the second cause of action in appellants' cross-complaint.

### Third Cause of Action—Negligence

We are unable to find, either from the pleadings or from the opposing declarations, that any issue of fact is established as to this theory. Appellants rely upon *Connor* v. *Great Western Sav. & Loan Assn.* (1968) 69 Cal.2d 850 [73 Cal.Rptr. 369, 447 P.2d 609] but that case is clearly distinguishable. There it was held Great Western might be liable, as a lender, to the plaintiffs who were the purchasers of tract homes which sustained physical damage because they were negligently designed and constructed. The Supreme Court found that a duty of care to them existed on the part of the lender because (p. 864): ". . . Great Western became much more than a lender content to lend money at interest on the security of real property. It became an active participant in a home construction enterprise. It had the right to exercise extensive control of the enterprise." Other plaintiffs in that action were the holders of promissory notes secured by second trust deeds who sought to impose liens on any recovery the other plaintiffs might obtain from the defendants, and to hold Great Western liable for impairment of their security caused by damage to the homes. As to the claims of those plaintiffs, it was held Great Western owed no independent duty of care.

The case of *Gill* v. *Mission Sav. & Loan Assn.* (1965) 236 Cal.App.2d 753 [46 Cal.Rptr. 456], is directly in point and directly contrary to appellants' position. In that case the appellants subordinated their trust deed with the proviso that proceeds from the superior lender were "to be used solely for the construction of improvements upon" the described property. It was there inferentially alleged that the lender was aware of this language, but it was further pointed out the lender was not a participant in the transaction culminating in the subordination agreement. ■ In our case, not only was respondent not a participant in such transaction, but assuming

respondent was aware of it, the language of subordination did not limit the use of funds to construction and specifically subordinated "without regard to the application or use of the proceeds of such loan or advances insofar as the validity of this subordination is concerned." Furthermore it provided that the beneficiaries (Weiss) understood such language would be relied upon by subsequent lenders who, but for such reliance, would not otherwise make loans. (And see: *Fries* v. *Broadway Federal Sav. & Loan Assn.* (1968) 258 Cal.App.2d 119 [65 Cal.Rptr. 460] at p. 122: "Absent some definite agreement known to and binding upon the lender, he is under no duty of dispensing the money himself; it is loaned to the borrower.")

From the record before us we are unable to find that respondent owed any duty of care to appellants or that respondent breached any duty. We therefore affirm that part of the summary judgment based upon the third cause of action in the cross-complaint.

### Fourth Cause of Action—Conspiracy

This cause of action alleged respondent and Asher ". . . orally conspired to induce cross-complainants to subordinate" to superior first deeds of trust favoring Brentwood ". . . and orally conspired to provide ASHER with excess loan proceeds, thereby diminishing and adversely affecting the value of the security . . . owned by cross-complainants." This cause of action incorporated by reference certain allegations from the three preceding causes of action but did not incorporate any allegations regarding the oral representations, or misrepresentations, previously mentioned. In essence, it alleged only that the conspirators agreed to make excess loans to Asher so that Brentwood would receive more interest.

Nowhere do the declarations filed by either side touch upon this cause of action. The declaration filed by respondent neither affirms nor denies the existence of a conspiracy; it is silent in that regard. Under these circumstances that portion of the summary judgment relating to this cause of action has no support and must be reversed.

Because of the foregoing, it becomes unnecessary to consider other points raised in respondent's brief related only to the second and third causes of action, but unrelated to issues raised by the fourth cause of action.

### APPEAL OF PUSKIN

First of all to be observed about this appeal is the fact that Puskin was not made a party to the summary judgment, which determined obligations as between Brentwood and the Weiss', only. Additionally we note the

fact that the motion for summary judgment was determinable solely by reference to the declarations filed. This contrasts with the determination of Puskin's rights which rested on the evidence, both oral and documentary, received by the court trying that dispute. Thus, the superior court's law-and-motion department on the one hand and the trial department on the other, considered separate issues presented under different circumstances.

Puskin's notice of appeal specifically delimited the issues he desired to raise on appeal and, pursuant to rule 4, California Rules of Court, only a partial reporter's transcript was requested, containing the testimony of three witnesses. On request of respondents Weiss, this was augmented to include stipulations and admissions of the parties. Appellant requested that the clerk's transcript contain only the first and fifth causes of action in his cross-complaint (which named Brentwood, Asher and the Weiss', among others, as cross-defendants) together with the trial court's Findings of Fact and Conclusions of Law and its Judgment. Inclusion of the judgment roll, as such, was not requested. (See: rule 5(d), Cal. Rules of Court; Code Civ. Proc., § 670.) The record before us thus consists only of the transcripts noted.

■ In his briefs, appellant Puskin pursues only the relief sought against the Weiss' under his first cause of action; we therefore deem as abandoned any other issues.

The first cause of action is pleaded in 10 separate, numbered paragraphs and, in essence, alleges that Puskin has rights in the $9,938.62 which are superior to any rights of the Weiss'. We have been furnished with no pleading responsive to the cross-complaint and are unable to ascertain what allegations were admitted or denied or if any affirmative defenses were raised. Neither the trial court's findings nor the judgment enlightens us nor is there any joint or separate pretrial statement to dispell our ignorance.

With, at times, well-controlled exasperation appellate courts have pointed out that when an appellant claims error occurred in the trial court, he must present a record disclosing the error relied upon and enabling an appellate court to review and correct it. ■ He has the burden of producing a record which overcomes the presumption of validity favoring a judgment or order. *People* v. *Wilkins* (1959) 169 Cal.App.2d 27, 31 [386 P.2d 540]; *Altman* v. *Poole* (1957) 151 Cal.App.2d 589, 593 [312 P.2d 6]; *Lerno* v. *Obergfell* (1956) 144 Cal.App.2d 221 [300 P.2d 846]. Under the circumstances outlined, and because we are provided a record inadequate to define the issues, we affirm the judgment.

In passing, we also comment that the briefs filed by both sides to this

appeal are grossly inadequate in failing to comply with the requirements of rule 15, California Rules of Court. Were we to consider this appeal on its merits, we would assert the provisions of rule 18 and make an appropriate order.

As to the first appeal, by appellants Weiss, judgment therein is affirmed except as to the fourth cause of action framed in their cross-complaint and, as to that cause of action, only, it is reversed. As to the second appeal, by appellant Puskin, the judgment is affirmed.

Jefferson, Acting P. J., and Kingsley, J., concurred.