Filed 5/29/15  Pollard v. United Security Bank CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| NEIL POLLARD et al., | |
| Plaintiffs and Appellants, | C070674 |
| v. | (Super. Ct. No. 39201000235472CUORSTK) |
| UNITED SECURITY BANK et al., | |
| Defendants and Respondents. | |

This case involves competing lien claims on a parcel of real property located in Stockton, California.  The senior lien was held by United Security Bank.  The junior lien was held by Neil and Tracy Pollard (Sellers), who sold the property to Granite Bay Holdings LLC (GBH), carrying back a purchase money deed of trust.  This deed of trust would have had priority (see Civ. Code, § 2898) but for the fact that sellers, after GBH transferred the property to Pollards, LLC (a company created to develop the property), entered into an agreement with this new company unconditionally subordinating their

1

deed of trust to that of United Security Bank.[1]  In reliance thereon, United Security Bank loaned a substantial amount of money to Pollards, LLC for purposes of property development.  When Pollards, LLC became unable to make payments, United Security Bank foreclosed on the property and extinguished the value of sellers' lien.

Sellers brought numerous causes of action against parties involved in the sale, financing, transfer, and foreclosure of the property.  In addition to United Security Bank, Pollards, LLC, GBH, and others, sellers also sued Richard N. Sauer Family Limited Partnership and Chun Investments LLC (non-managing members of Pollards, LLC), and their respective general partner and managing member, Richard N. Sauer and Richard B.D. Chun (collectively Sauer/Chun defendants).  Sellers appeal from judgments entered after the trial court granted separate motions for summary judgment brought by United Security Bank and the Sauer/Chun defendants.

With respect to the judgment entered in favor of United Security Bank, sellers contend:  (1) their purchase money deed of trust has priority over United Security Bank's deed of trust because, as in *Protective Equity Trust #83, Ltd. v. Bybee* (1991) 2 Cal.App.4th 139 (*Protective Equity*), United Security Bank cannot enforce the "boilerplate 'subordination agreement'" entered into between sellers and Pollards, LLC; (2) the trial court erred in relying on *Swiss Property Management Co., Inc. v. Southern California IBEW-NECA Pension Plan* (1997) 60 Cal.App.4th 839 (*Swiss Property*) in finding the subordination agreement to be enforceable; (3) there was a triable issue of material fact as to whether sellers agreed to enter into a subordination agreement with "Pollards, LLC" when the agreement itself stated it was entered into between sellers and "Pollard LLC"; (4) there was a triable issue of material fact concerning the adequacy of

---

[1]      We note Pollards, LLC is in no way related to sellers.  The name was apparently chosen because the property has been referred to as "Pollardville" for a number of years.

2

consideration for the subordination agreement; (5) there was a triable issue of material fact concerning whether the subordination agreement was induced by fraud, specifically, United Security Bank's concealment of the fact GBH transferred the property to Pollards, LLC; and (6) United Security Bank breached duties owed to sellers in a number of ways, including failure to oversee distribution of the loan proceeds and failure to disclose the transfer from GBH to Pollards, LLC, each of which constituted actionable negligence.

With respect to the judgment entered in favor of the Sauer/Chun defendants, sellers contend: (1) there was a triable issue of material fact as to whether the Sauer/Chun defendants, who signed an addendum to the original note between sellers and GBH expressly obligating "Pollard, LLC" to make payments under the note, by so signing, obligated themselves to pay the note; (2) there were triable issues of material fact concerning whether Pollards, LLC was merely the alter ego of the Sauer/Chun defendants, including whether the company was adequately capitalized; and (3) triable issues of material fact existed as to whether the Sauer/Chun defendants committed the torts of promissory fraud, intentional misrepresentation, fraudulent concealment, negligence, waste, and elder abuse.[2]

---

[2]     Sellers tender numerous additional arguments for the first time in their reply brief, which exceeds the length of their opening brief. We neither recount nor address these new contentions because arguments may not be raised for the first time in an appellant's reply brief. "'Obvious considerations of fairness in argument demand that the appellant present all of his [or her] points in the opening brief. To withhold a point until the closing brief would deprive the respondent of his [or her] opportunity to answer it or require the effort and delay of an additional brief by permission. Hence the rule is that points raised in the reply brief for the first time will not be considered, unless good reason is shown for failure to present them before.'" (*Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764, quoting *Neighbours v. Buzz Oates Enterprises* (1990) 217 Cal.App.3d 325, 335, fn. 8.) Sellers provide no reason for delaying these additional arguments until the reply brief.

We conclude several issues are forfeited, i.e., whether there were triable issues of material fact concerning the adequacy of consideration for the subordination agreement, and whether the Sauer/Chun defendants committed the torts of fraudulent concealment, negligence, waste, and elder abuse, for lack of meaningful legal argument. Indeed, most of these contentions are made without citation to any legal authority. The remainder are made in cursory fashion and fail to cite to the record. (See *Century Sur. Co. v. Polisso* (2006) 139 Cal.App.4th 922, 956; *M.P. v. City of Sacramento* (2009) 177 Cal.App.4th 121, 134.)

On the merits, we conclude the trial court properly granted summary judgment in favor of United Security Bank and the Sauer/Chun defendants. With respect to United Security Bank, the trial court was correct to conclude the subordination agreement was enforceable. Under that agreement, sellers "unconditionally subordinate[d]" their deed of trust to that of United Security Bank, which became "prior and superior to" the sellers' deed of trust by virtue of the subordination. As we explain, the trial court was also correct to conclude *Swiss Property*, *supra*, 60 Cal.App.4th 839, was the controlling authority and properly distinguished *Protective Equity*, *supra*, 2 Cal.App.4th 139, on its facts. With respect to sellers' assertions that triable issues of material fact exist as to whether the subordination agreement was induced by fraud on the part of United Security Bank and whether sellers consented to enter into the subordination agreement in light of the typographical error omitting the "s" from Pollards, LLC, their operative complaint fails to set forth a cognizable claim for rescission of the agreement based on either fraud or mistake. Finally, we also reject sellers' claim that there were triable issues of fact as to whether United Security Bank breached certain duties purportedly owed to sellers. The only such duty alleged to have been breached in sellers' operative complaint was the duty

4

to oversee distribution of the loan proceeds. However, as a matter of law, we conclude such a duty was not owed.

With respect to the Sauer/Chun defendants, we conclude these defendants are not directly liable under the addendum to the note. The addendum's plain and unambiguous terms obligated Pollards, LLC, and no one else, to make the designated payments. The trial court also correctly concluded the Sauer/Chun defendants cannot be held vicariously liable for Pollards, LLC under an alter ego theory. Even assuming there is a question of fact regarding the adequacy of capitalization, this is merely one of several factors relevant to the alter ego theory. Sellers provide no evidence showing any of the other factors. On this record, as a matter of law, the Sauer/Chun defendants are not liable for Pollards, LLC under an alter ego theory. Finally, we also reject sellers' claim that there were triable issues of material fact concerning liability of the Sauer/Chun defendants for the torts of promissory fraud and intentional misrepresentation.

We therefore affirm the judgments.

BACKGROUND

***Sale of the Property***

In March 2006, sellers agreed to sell the subject property to GBH for $2.2 million. Under the terms of the purchase agreement, GBH, having made an initial deposit of $10,000, agreed to pay an additional $650,000; sellers agreed to finance the balance of the purchase price, carrying back a promissory note in the amount of $1.54 million, to be secured by a purchase money deed of trust. Sellers also agreed "to subordinate this note to a bank loan in favor of the buyers and take a 2nd position on title."

In July 2006, GBH, having made the required $650,000 payment, executed the promised note. The note provided GBH would pay sellers $1.54 million with interest, making monthly interest-only payments of $6,500 from July 1, 2007 through June 30,

5

2011, at which point the entire amount would become due and payable. The note also provided sellers with an option to declare the remaining balance due and payable "in the event of a voluntary sale, transfer or conveyance of all or any portion of the property." The same month, the promised deed of trust was executed and recorded.

### *Creation of Pollards, LLC*

In December 2006, Pollards, LLC was created for the sole purpose of owning and developing the property. Pollards, LLC has three members: (1) GBH; (2) Chun Investments, LLC; and (3) Richard N. Sauer Family Limited Partnership (Sauer Partnership). GBH is the managing member of Pollards, LLC and owns a 67 percent interest in the company. GBH made an initial capital contribution of $30,000 to Pollards, LLC. Chun Investments, LLC and Sauer Partnership own the remaining 33 percent of Pollards, LLC, each company making an initial capital contribution of $325,000. Other than these initial contributions, neither company made any additional contributions to Pollards, LLC. At all relevant times, Larry J. John, managing member of GBH, acted as the manager of Pollards, LLC on behalf of GBH. Neither Chun Investments, LLC nor Sauer Partnership had any role in the management of the company.

### *Pollards, LLC Obtains Title and Secures a Construction Loan*

In July 2007, GBH transferred the property to Pollards, LLC. The same month, Pollards, LLC borrowed $1.45 million from United Security Bank. The loan agreement, titled, "Construction Loan Agreement," did not require United Security Bank to oversee construction on the project to ensure that loan disbursements were being used for construction purposes. Instead, the agreement gave United Security Bank the option of requiring "the Title Insurance Company, [i.e., Fidelity National Title Company (Fidelity),] rather than [United Security Bank], to make Loan disbursements" after certain conditions precedent to disbursement have been satisfied "to [Fidelity's] satisfaction."

6

The agreement also gave United Security Bank the right to inspect the project to ensure the project "reflects good quality work and materials, complies with the plan and specification and completes that construction stage," but stated unequivocally United Security Bank was "under no obligation to supervise, inspect or inform [Pollards, LLC] of the progress of construction . . . ." The same day, Pollards, LLC executed a promissory note in the amount of $1.45 million and a deed of trust securing the debt.

### *Sellers Subordinate Their Deed of Trust to that of United Security Bank*

In August 2007, sellers entered into a subordination agreement with Pollards, LLC, erroneously designated on the agreement as "Pollard LLC." After reciting the specifics of the two deeds of trust, i.e., GBH executed the purchase money deed of trust in favor of sellers, and thereafter, Pollards, LLC executed the deed of trust in favor of United Security Bank to secure the construction loan, the subordination agreement further recited: (1) "it is a condition precedent to obtaining said loan that [United Security Bank's deed of trust] shall unconditionally be and remain at all times a lien or charge upon the [property] prior and superior to the lien or charge of [the sellers' deed of trust]," (2) "[United Security Bank] is willing to make said loan provided . . . that [sellers] will specifically and unconditionally subordinate the lien or charge of [their deed of trust] to the lien or charge of [United Security Bank's deed of trust]," and (3) "it is to the mutual benefit of the parties hereto that [United Security Bank] make such loan to [Pollards, LLC]; and [sellers are] willing that [United Security Bank's deed of trust] shall, when recorded, constitute a lien or charge upon [the property] which is unconditionally prior and superior to the lien or charge of [the sellers' deed of trust]."

The subordination agreement then stated: "[I]n consideration of the mutual benefits accruing to the parties hereto and other valuable consideration, the receipt and sufficiency of which consideration is hereby acknowledged, and in order to induce

7

[United Security Bank] to make the loan above referred to, it is hereby declared, understood and agreed as follows:  [¶] (1) That [United Security Bank's deed of trust] shall unconditionally be and remain at all times a lien or charge on the [property] prior and superior to the lien or charge of [the sellers' deed of trust].  [¶]  (2) That [United Security Bank] would not make its loan above described without this subordination agreement.  [¶]  (3) That this agreement shall be the whole and only agreement with regard to the subordination of the lien or charge of [the sellers' deed of trust] to the lien or charge of [United Security Bank's deed of trust] and shall supersede and cancel, but only insofar as would affect the priority between the deeds of trust hereinbefore specifically described, any prior agreement as to such subordination including, but not limited [to], those provisions, if any, contained in [the sellers' deed of trust], which provide for the subordination of the lien or charge thereof to another deed or deeds of trust or to another mortgage or mortgages."

The subordination agreement further stated that sellers "declare[], agree[] and acknowledge[] that . . . [United Security Bank] in making disbursements pursuant to [the loan agreement] is under no obligation or duty to, nor has [United Security Bank] represented that it will, see to the application of such proceeds by the person or persons to whom [United Security Bank] disburses such proceeds and any application or use of such proceeds for purposes other than those provided for in such agreement or agreements shall not defeat the subordination herein made in whole or in part."

At the top of the first page of the agreement, immediately under the title, "**SUBORDINATION AGREEMENT**," the following notice appears:

"NOTICE:  THIS SUBORDINATION AGREEMENT RESULTS IN YOUR SECURITY INTEREST IN THE PROPERTY BECOMING SUBJECT TO AND OF

8

LOWER PRIORITY THAN THE LIEN OF SOME OTHER OR LATER SECURITY INSTRUMENT."

At the top of the last page of the agreement, immediately above the signature lines, there appears the following notice:

"NOTICE: THIS SUBORDINATION AGREEMENT CONTAINS A PROVISION WHICH ALLOWS THE PERSON OBLIGATED ON YOUR REAL PROPERTY SECURITY TO OBTAIN A LOAN A PORTION OF WHICH MAY BE EXPENDED FOR OTHER PURPOSES THAN IMPROVEMENT OF THE LAND.

"**IT IS RECOMMENDED THAT, PRIOR TO THE EXECUTION OF THIS SUBORDINATION AGREEMENT, THE PARTIES CONSULT WITH THEIR ATTORNEYS WITH RESPECT THERETO.**"

Sellers personally signed the subordination agreement. On behalf of Pollards, LLC, the subordination agreement was signed by D. Rick Cheney (as managing member of GBH), Larry J. John (as managing member of GBH), Richard B.D. Chun (as managing member of Chun Investments, LLC), and Richard N. Sauer (as managing partner of the Sauer Partnership).

### *Modification of the Original Note*

Also in August 2007, after the subordination agreement was signed, sellers and Pollards, LLC executed an addendum to the original note that required Pollards, LLC (again erroneously designated as "Pollard, LLC") to make monthly payments of $6,500 from August 30, 2007, through July 30, 2011, at which point the entire amount would become due and payable. Sellers personally signed the addendum. The addendum was also signed by D. Rick Cheney, Larry J. John, Richard B.D. Chun, and Richard N. Sauer.

9

### *Default and Foreclosure*

Two years later, in August 2009, Pollards, LLC defaulted on the United Security Bank note. In response, United Security Bank conducted a nonjudicial foreclosure sale of the property under the power of sale contained in the bank's deed of trust. United Security Bank was the successful bidder. As a result of the sale, the value of sellers' lien was extinguished.

### *Sellers' Lawsuit*

Sellers' second amended complaint, the operative complaint in this lawsuit, asserts tort and contract claims against United Security Bank, the Sauer/Chun defendants, GBH, Pollards, LLC, Ralph Servidio (sellers' realtor), Debbie Servidio (notary public), and Fidelity.

Sellers asserted four causes of action against United Security Bank: Cancellation of Instrument (Fifth Cause of Action); Negligence (Sixth Cause of Action); Financial Abuse of Elder (Eleventh Cause of Action); and Declaratory Relief (Thirteenth Cause of Action). Sellers asserted 10 causes of action against the Sauer/Chun defendants: Negligent Misrepresentation (First Cause of Action); False Promise (Second Cause of Action); Intentional Misrepresentation (Third Cause of Action); Fraudulent Concealment (Fourth Cause of Action); Cancellation of Instrument (Fifth Cause of Action); Negligence (Sixth Cause of Action); Failure to Pay Promissory Note (Seventh Cause of Action); Waste (Eighth Cause of Action); Financial Abuse of Elder (Eleventh Cause of Action); and Declaratory Relief (Thirteenth Cause of Action).

We briefly describe the causes of action relevant to this appeal, omitting those as to which we have concluded sellers' appellate arguments are forfeited.

With respect to causes of action asserted against both United Security Bank and the Sauer/Chun defendants, the Fifth Cause of Action sought cancellation, or rescission,

10

of the subordination agreement, alleging this agreement "was obtained by false promises, misrepresentations of material facts, and concealment of material facts." This cause of action was based on two alleged acts of fraud we describe in detail in the discussion portion of this opinion.

In the Sixth Cause of Action, sellers alleged both United Security Bank and the Sauer/Chun defendants "breached a duty of care to [sellers] by reason of the fact virtually none of the loan resulted in the construction of improvements" to the property and each of these defendants "had the power to control and/or knowledge of the application of the proceeds of the loan."

In the Thirteenth Cause of Action, sellers alleged the existence of a dispute regarding the foreclosure sale and the validity and enforceability of various documents, including the subordination agreement.

Turning to the remaining causes of action asserted against the Sauer/Chun defendants, the First, Second, and Third Causes of Action were based on allegations these defendants misrepresented, both negligently and intentionally, they would utilize the loan proceeds to improve and develop the property, and falsely promised to do so without any intent to perform. In the Seventh Cause of Action, sellers alleged these defendants are "indebted to [sellers] in the sum of $1,252,000.00 plus interest . . . by reason of the fact that they have failed to pay as agreed under the terms of the note . . . and addendum."

*Motions for Summary Judgment*

United Security Bank and the Sauer/Chun defendants each filed a motion for summary judgment. In summarizing arguments made in their motions, and in opposition and reply thereto, we again omit causes of action as to which we have concluded sellers' appellate arguments are forfeited.

11

We begin with United Security Bank's motion for summary judgment. With respect to the Fifth Cause of Action seeking to cancel, or rescind, the subordination agreement, United Security Bank argued the agreement was valid and enforceable because, as a matter of law: (1) United Security Bank "did not owe a duty to [sellers] to monitor loan funds, nor is there any public policy giving rise to such duty"; (2) sellers' notarized signatures were valid; (3) United Security Bank did not participate in diversion of a construction loan; (4) sellers received actual notice of the foreclosure sale; and (5) the subordination agreement was supported by adequate consideration. United Security Bank argued the Sixth Cause of Action for negligence lacked merit because the bank owed no "legal duty to [sellers] to monitor, distribute, or administer the [loan proceeds] in any particular manner." Finally, in the alternative to granting summary judgment, United Security Bank argued the trial court should grant summary adjudication on the issue of duty to monitor distribution of the loan proceeds.

In opposition, with respect to cancellation of the subordination agreement, sellers argued: (1) under *Protective Equity*, *supra*, 2 Cal.App.4th 139, United Security Bank cannot enforce the subordination agreement because the buyer "<u>defrauded the sellers by not using the money for construction purposes</u>"; (2) the agreement was procured through fraud, i.e., concealment of the fact the property was transferred to Pollards, LLC; (3) the agreement is "simply non-existent" because "[t]here was no Pollard, LLC," and therefore, no mutual consent or sufficient consideration as a matter of law; (4) even if the agreement was with Pollards, LLC, there was still no consideration for the agreement; and (5) the agreement is inherently ambiguous. With respect to their negligence claim, sellers argued "a jury might find the bank liable for negligence" based on a number of acts and omissions, including the disbursal of loan proceeds without any construction taking place and the failure to advise sellers of certain facts. Sellers responded to United

12

Security Bank's argument regarding absence of duty by arguing the factors enunciated by our Supreme Court in *Biakanja v. Irving* (1958) 49 Cal.2d 647 support the imposition of a duty on the bank not to disburse funds "without corresponding improvements to the real property."

United Security Bank argued in reply: (1) there is no evidence United Security Bank was connected with the fraud allegedly committed by Pollards, LLC, GBH, the Sauer/Chun defendants, and Servidio; (2) there is no evidence Servidio acted on behalf of United Security Bank; (3) the typographical error in the subordination agreement, i.e., omission of the "s" from Pollards, LLC, was immaterial; (4) the agreement is supported by adequate consideration and also enforceable under principles of promissory estoppel and equitable estoppel; and (5) United Security Bank owed no duty "to ensure that loan funds [were] used for construction purposes" or otherwise "'advise' [sellers] of certain facts and details that were purportedly not known at the time" they executed the subordination agreement.

We now turn to the summary judgment motion filed by the Sauer/Chun defendants. These defendants argued sellers could not establish the elements of the alter ego doctrine necessary to hold them liable for the actions or obligations of Pollards, LLC. Specifically, these defendants argued sellers could not establish unity of interest and ownership because Pollards, LLC was adequately capitalized and none of the Sauer/Chun defendants had any control over the actions of the company. Nor, they argued, did equity require the corporate (LLC) veil be pierced. These defendants further argued there was no evidence of direct liability for any of the causes of action asserted against them.

In opposition, with respect to the Sauer/Chun defendants' alleged direct liability under the terms of the note and addendum, sellers argued: (1) these defendants signed the addendum and are thereby obligated to pay the note; (2) "the entity protection

13

normally given to LLC's should be disregarded under the circumstances of this case";
and (3) Richard N. Sauer signed the addendum as general partner of the Sauer
Partnership and is therefore liable as a general partner. With respect to the tort causes of
action, sellers argued there existed triable issues of material fact as to whether these
defendants committed the various torts. Finally, sellers conceded summary adjudication
should be granted in favor of the Sauer/Chun defendants as to their cause of action for
cancellation of the subordination agreement since these defendants were not parties to
this agreement.

The Sauer/Chun defendants argued in reply that sellers' opposition raised no
triable issues of material fact and defendants are entitled to judgment as a matter of law.

### *Trial Court Rulings*

The trial court granted both motions for summary judgment. With respect to
United Security Bank's motion, the trial court ruled the subordination agreement was
valid and enforceable, distinguishing *Protective Equity*, *supra*, 2 Cal.App.4th 139, and
relying on *Swiss Property*, *supra*, 60 Cal.App.4th 839, both of which will be described in
detail in the discussion that follows. The trial court also rejected sellers' argument that
the subordination agreement should be cancelled because it omitted the "s" from
Pollards, LLC. Nor did the trial court find there to be any triable issue of material fact
concerning whether United Security Bank fraudulently induced the subordination
agreement, explaining: "[Sellers] seek to bind [United Security Bank] to
Servidio's/[GBH]'s alleged fraud through an agency theory, whereby Servidio
represented [United Security Bank] through [GBH]. There is no admissible evidence,
however, that Servidio acted as a representative, agent, or employee of [United Security
Bank] at any relevant time." The trial court also rejected sellers' arguments regarding the
adequacy of consideration and alleged ambiguity in the agreement. With respect to

14

sellers' negligence cause of action, the trial court ruled United Security Bank owed no duty to supervise disbursement of the loan funds and therefore sellers' claim failed as a matter of law.

With respect to the summary judgment motion brought by the Sauer/Chun defendants, on the alter ego issue, the trial court ruled these defendants satisfied their initial burden of showing sellers cannot show a unity of interest between Pollards, LLC and its members, and sellers failed to proffer admissible evidence sufficient to raise a triable issue of material fact. The trial court also ruled sellers failed to raise any triable issues of material fact regarding the Sauer/Chun defendants' direct liability for any of the causes of action asserted against these defendants.

DISCUSSION

**I**

***Summary Judgment Principles***

We begin by summarizing several principles that govern the grant and review of summary judgment motions under section 437c of the Code of Civil Procedure.

"A defendant's motion for summary judgment should be granted if no triable issue exists as to any material fact and the defendant is entitled to a judgment as a matter of law. [Citation.] The burden of persuasion remains with the party moving for summary judgment. [Citation.]" (*Kahn v. East Side Union High School Dist.* (2003) 31 Cal.4th 990, 1002-1003 (*Kahn*); Code Civ. Proc., § 437c, subd. (c).) Thus, a defendant moving for summary judgment "bears the burden of persuasion that 'one or more elements of' the 'cause of action' in question 'cannot be established,' or that 'there is a complete defense' thereto. [Citation.]" (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850, (*Aguilar*); Code Civ. Proc., § 437c, subd. (*o*)(2).) Such a defendant also "bears the initial burden of production to make a prima facie showing that no triable issue of material fact

15

exists.  Once the initial burden of production is met, the burden shifts to [plaintiff] to demonstrate the existence of a triable issue of material fact."  (*Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1250, citing *Aguilar*, *supra*, 25 Cal.4th at pp. 850-851.)

On appeal from the entry of summary judgment, "[w]e review the record and the determination of the trial court de novo."  (*Kahn*, *supra*, 31 Cal.4th at p. 1003.)  "While we must liberally construe plaintiff's showing and resolve any doubts about the propriety of a summary judgment in plaintiff's favor, plaintiff's evidence remains subject to careful scrutiny.  [Citation.]  We can find a triable issue of material fact 'if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof.'  [Citation.]"  (*King v. United Parcel Service, Inc.* (2007) 152 Cal.App.4th 426, 433; see *Sangster v. Paetkau* (1998) 68 Cal.App.4th 151, 163 ["responsive evidence that gives rise to no more than mere speculation cannot be regarded as substantial, and is insufficient to establish a triable issue of material fact"].)

## II

### *United Security Bank's Ability to Enforce the Subordination Agreement*

"Under a subordination agreement, a party agrees to subordinate the priority of its lien to that of another.  [Citation.]  The agreement must be interpreted to enforce the objective intent of the parties.  [Citation.]  Under Civil Code section 2898, a purchase money deed of trust has priority over other liens on real property, but financial institutions may choose not to lend money on the security of real property unless their lien is in first position.  [Citations.]  For this reason, subordination agreements are commonly used when construction loans are made on property on which there is a prior purchase money deed of trust."  (*Citizens Business Bank v. Gevorgian* (2013) 218 Cal.App.4th 602, 614.)

Sellers contend their purchase money deed of trust has priority over United Security Bank's deed of trust. They argue United Security Bank cannot enforce the "boilerplate 'subordination agreement'" entered into between sellers and Pollards, LLC because, as in *Protective Equity*, *supra*, 2 Cal.App.4th 139, the buyer of the property "<u>defrauded</u> the sellers by <u>not using the money for construction purposes</u>," and therefore, "'the subordination agreement cannot be enforced by [United Security Bank].'" Sellers also argue the trial court erred in relying on *Swiss Property*, *supra*, 60 Cal.App.4th 839 in finding the subordination agreement to be enforceable. We reject these arguments. The trial court was correct to conclude *Swiss Property* was the controlling authority and properly distinguished *Protective Equity* on its facts.

In *Swiss Property*, *supra*, 60 Cal.App.4th 839, the sellers agreed to sell two parcels of property to the buyer and further agreed to take back deeds of trust as part of the purchase financing. A rider to the deeds of trust provided the sellers would subordinate their deeds of trust "for construction and development financing," consistent with certain criteria set forth in the rider, including a requirement the loan funds "be used solely in connection with the development of the Property." (*Id*. at p. 841.) The buyer obtained a construction loan conditioned on the lender having first lien priority. To accomplish this, the lender and the title insurance company required the sellers to sign a California Land Title Association (CLTA) form subordination agreement, identical in all material ways to the subordination agreement signed in this case. (*Ibid*.) As in this case, the subordination agreement provided the lender's deed of trust "shall unconditionally be and remain at all times a lien or charge on the [property] prior and superior to the lien or charge of [the sellers' deed of trust]," and further provided, "this agreement shall be the whole and only agreement with regard to subordination of the lien or charge of [the sellers' deed of trust] to the lien or charge of [the lender's deed of trust] and shall supersede and cancel, but

17

only insofar as would affect the priority between the deeds of trust hereinbefore specifically described, any prior agreement as to such subordination including, but not limited to, those provisions, if any, contained in [the sellers' deed of trust], which provide for the subordination of the lien or charge thereof to another deed or deeds of trust or to another mortgage or mortgages." (*Id*. at pp. 841-842.) The subordination agreement, also like the agreement signed in this case, "clearly notified [the sellers] that the lender would *not* monitor disbursement of funds." (*Id*. at p. 845.) The sellers argued on appeal that the lender lost the priority given by the subordination agreement because the lender did not ensure compliance with the conditions contained in the rider to their deeds of trust. (*Id*. at p. 841.)

The Court of Appeal held the subordination agreement superseded the specific terms of the rider to the sellers' deeds of trust; therefore, there was "no breach of the conditions of subordination" and the lender's lien had priority. (*Swiss Property*, *supra*, 60 Cal.App.4th at p. 849.) The court first acknowledged the competing interests at stake: on one hand, there are "strong public policy reasons to protect the seller in subordination situations"; on the other, "the lender can set the terms and conditions under which it is willing to loan money, including the condition that the security for its loan be an insured first priority position." (*Id*. at pp. 842-843.) The court then distinguished two cases relied upon by the sellers: *Middlebrook-Anderson Co. v. Southwest Sav. & Loan Assn.* (1971) 18 Cal.App.3d 1023 (*Middlebrook-Anderson*) and *Protective Equity*, *supra*, 2 Cal.App.4th 139.

In *Middlebrook-Anderson*, *supra*, 18 Cal.App.3d 1023, the Court of Appeal reversed a judgment entered after the trial court sustained the lender's demurrer. There, the seller did not enter into an express subordination agreement, but rather agreed to subordination by recording after the lender, "i.e., subordination by operation of the

18

recording laws." (*Swiss Property*, *supra*, 60 Cal.App.4th at p. 843.) "The complaint alleged that the lender (1) knew that the seller would subordinate only on condition that loan funds be used to develop the property; (2) undertook to control disbursements from the construction loan fund; and (3) allowed improper disbursements for nonconstruction purposes." (*Ibid*.) The court interpreted the complaint to allege "an arrangement of subordination whereby the seller relied upon the responsibility of the lender to make voucher payments only for construction purposes and the reliance of the seller was known to the lender." (*Middlebrook-Anderson*, *supra*, 18 Cal.App.3d at p. 1031.) Thus, because a condition of the alleged implied subordination agreement was "the proper use of the construction loan funds" (*id*. at p. 1033), and it was further alleged this condition was not satisfied, the complaint stated valid causes of action for restoration of the priority of the seller's deed of trust. (*Id*. at p. 1037.)

Distinguishing *Middlebrook-Anderson*, the *Swiss Property* court explained: "[U]nlike the implied agreement in *Middlebrook-Anderson*, the sellers here signed a subordination agreement which clearly notified them that the lender would *not* monitor disbursement of funds. If the sellers desired the lender to monitor fund disbursement, they should have raised the issue with the lender before signing the documents. Even though they apparently relied on fraudulent representations by the buyer that the lender would monitor the use of funds, they should not have done so in view of the explicit language to the contrary in the CLTA subordination agreements." (*Swiss Property*, *supra*, 60 Cal.App.4th at p. 845, fn. omitted.) The court concluded: "[T]he sellers' execution of the respective agreements makes it clear that (1) the loan depended on the execution of the agreement; (2) the agreement superseded the prior agreements relating to subordination; and (3) the agreement clearly notified the sellers that the [lender] would not supervise disbursement of the loan proceeds. Under these conditions, there can be no

19

implied agreement to the contrary, as we found in *Middlebrook-Anderson*. In fact, it appears that the CLTA form subordination agreement was designed to eliminate just such implied agreements." (*Id*. at p. 846.)

In *Protective Equity*, *supra*, 2 Cal.App.4th 139, in which a CLTA form subordination agreement was also used (see *Swiss Property*, *supra*, 60 Cal.App.4th at p. 848), the seller "struck" certain portions of the agreement, including "a statement giving notice that the subordination agreement contained a provision under which buyer was allowed to use portions of the construction loan for purposes other than improvement of the property." (*Protective Equity*, *supra*, 2 Cal.App.4th at p. 143.) The escrow instructions between the seller and the buyer were later amended to provide: "'Buyer agrees to delete paragraph in the subordination agreement and warrants all funds from the development loan will be used to develop the property.'" (*Ibid*.) The Court of Appeal held the lenders could not enforce the subordination agreement because, as in *Middlebrook-Anderson*, the lenders were "aware that seller had agreed to subordinate only to a construction loan" and "the terms of the agreement under which seller agreed to subordinate were not complied with." (*Id*. at p. 150.) This was true notwithstanding the fact the subordination agreement retained "a provision disclaiming any obligation by the lenders to oversee the use of the proceeds of their loan." (*Id*. at p. 143.) The *Protective Equity* court explained: "Lenders' refusal to undertake that supervision, however, did not insulate them from risk of loss in the event that buyer failed to meet the terms of its agreement with seller. [¶] As a third party beneficiary of the agreement between seller and buyer, lenders cannot now seek to enforce seller's obligation under the agreement once the agreement has been breached by buyer. Lenders cannot assert greater rights than those of buyer under the subordination agreement [citation], and under the

20

agreement buyer would not have been able to force seller to subordinate to a loan other than a construction loan. [Citation.]" (*Id*. at p. 151.)

Distinguishing *Protective Equity*, the *Swiss Property* court explained: "In contrast, the agreement here was unmodified." (*Swiss Property*, *supra*, 60 Cal.App.4th at p. 848.) Accordingly, "*Protective Equity* did not consider conflicting agreements on the issue of subordination. Instead, it considered modifications made by the seller to the CLTA form agreement, and amended escrow instructions that provided that buyer warranted that the loan proceeds would be used for development of the property. It was there undisputed that this warranty was breached because the construction funds were not used for improvement of the property. [¶] In this case, the terms of the riders to the deeds of trust and the CLTA subordination agreement are irreconcilably conflicting. The conflict was caused by sellers' execution of the CLTA subordination agreements after execution of the riders to the deeds of trust. For the reasons stated above, we find that the subordination agreements effectively superseded the riders. Thus, there were no longer conditions of subordination to be breached." (*Id*. at pp. 849-850.)

Here, like *Swiss Property*, and unlike *Protective Equity*, the subordination agreement signed by sellers was unconditional and superseded any prior agreements concerning subordination. As previously described, the agreement provided: (1) United Security Bank's deed of trust "shall *unconditionally* be and remain at all times a lien or charge on the [property] prior and superior to the lien or charge of [the sellers' deed of trust]"; (2) United Security Bank "would not make [the loan] without this subordination agreement"; and (3) "this agreement *shall be the whole and only agreement with regard to the subordination* of the lien or charge of [the sellers' deed of trust] to the lien or charge of [United Security Bank's deed of trust] *and shall supersede and cancel*, but only insofar as would affect the priority between the deeds of trust hereinbefore specifically

21

described, *any prior agreement as to such subordination . . . .*" (Italics added.) The agreement further stated sellers' agreement that United Security Bank "in making disbursements pursuant to [the loan agreement] is under no obligation or duty to, nor has [United Security Bank] represented that it will, see to the application of such proceeds by the person or persons to whom [United Security Bank] disburses such proceeds and any application or use of such proceeds for purposes other than those provided for in such agreement or agreements shall not defeat the subordination herein made in whole or in part." Finally, the agreement warned sellers immediately above the signature lines: "THIS SUBORDINATION AGREEMENT CONTAINS A PROVISION WHICH ALLOWS THE PERSON OBLIGATED ON YOUR REAL PROPERTY SECURITY TO OBTAIN A LOAN A PORTION OF WHICH MAY BE EXPENDED FOR OTHER PURPOSES THAN IMPROVEMENT OF THE LAND."

Unlike *Protective Equity*, sellers did not strike any of these provisions in the subordination agreement. Accordingly, as in *Swiss Property*, "if the sellers had desired to insist on the conditions of subordination . . . , they should have raised the issue at the time the CLTA subordination agreement[] [was] presented to them to be signed. Instead, they signed the CLTA subordination agreement[] with the understanding that execution of the document[] would allow the loan to be made. It is too late for them now to ask this court to totally disregard the clear and unconditional language in the CLTA subordination agreement[] . . . . After all, the lender is entitled to condition the making of a loan on its receiving an insured first priority position. If sellers were not willing to have the loan made on that basis, they should not have signed the CLTA subordination agreement[]." (*Swiss Property*, *supra*, 60 Cal.App.4th at p. 850.)

Nevertheless, sellers attempt to distinguish *Swiss Property* because that case involved a subordination agreement between the sellers and the *buyer* of the property,

22

whereas here, the subordination agreement was between the sellers and the *buyer's assignee* (Pollards, LLC), after the buyer (GBH) transferred the property to Pollards, LLC. Sellers provide no reasoned argument as to why this additional layer of ownership, by itself, should alter the result. Sellers also point out the addendum to the original note, obligating Pollards, LLC to take up payments under the note, was signed after the subordination agreement was signed. Again, sellers provide no reasoned argument as to why this should make a difference, except to say that they "could not have waived the provisions of their original agreement because the new note had not yet been signed i.e. the sequence was the mirror image of that set forth in the *Swiss Property* case." Sellers miss the point. *Swiss Property* involved an unconditional subordination agreement superseding a prior conditional subordination agreement contained in riders to the sellers' deeds of trust. Here too, the unconditional subordination agreement signed by sellers supersedes any pre-existing conditional subordination agreement. The addendum to the original note obligating Pollards, LLC to make payments under the note does not set forth conditions to subordination. Accordingly, the timing of the addendum to the note does not alter the outcome.

Sellers also attempt to distinguish *Swiss Property* because: (1) the subordination agreement "was obtained by trickery by failing to disclose the prior transfer from [GBH] to [Pollards, LLC]"; (2) "nor can it be stated that [sellers] ever agreed to subordinate to Pollards, LLC because the subordination agreement in question only purports to subordinate to Pollard, LLC and both entities were unknown to [sellers]"; and (3) "it cannot be stated that [sellers] received anything of value out of the subordination by reason of the fact that because of the . . . transfer of [the] property [sellers] <u>were already owed</u> all the money without signing anything." These arguments are presented in just as cursory a fashion and also fail. However, because they are repeated later in the opening

23

brief, under separate headings, we shall address them under separate headings in this opinion, with the exception of sellers' argument regarding the purported lack of consideration for the subordination agreement. As we previously noted, this argument is forfeited for failure to provide meaningful analysis or any citation to relevant legal authority. (See *M.P. v. City of Sacramento*, *supra*, 177 Cal.App.4th at p. 134.) As for the remaining two arguments, for present purposes, it will suffice to state each fails and therefore provides no basis upon which to distinguish this case from *Swiss Property*.

Finally, sellers rely on *Citizens Business Bank*, *supra*, 218 Cal.App.4th 602, in which the Court of Appeal held a subordination agreement to be unenforceable "where the developer and the bank entered into a side agreement between themselves, to which the seller did not consent, about which it knew nothing, and which substantially impaired its security." (*Id*. at p. 605.) Here, there are no allegations of an undisclosed side agreement between United Security Bank and Pollards, LLC that substantially impaired sellers' security interest in the property. Reliance on *Citizens Business Bank* is therefore misplaced. As the trial court correctly found, *Swiss Property* is the controlling authority.

### III

### *Rescission Based on Fraud*

Sellers claim there was a triable issue of material fact concerning whether the subordination agreement should be cancelled, or rescinded, because it was obtained by fraud. We disagree.

"A party to a contract may rescind the contract in the following cases: [¶] (1) If the consent of the party rescinding, or of any party jointly contracting with him [or her], was given by mistake, or obtained through duress, menace, fraud, or undue influence, exercised by or with the connivance of the party as to whom he [or she] rescinds, or of

24

any other party to the contract jointly interested with such party." (Civ. Code, § 1689, subd. (b)(1).) Fraud justifying rescission "involves conscious misrepresentation, or concealment, or non-disclosure of a material fact which induces the innocent party to enter the contract." (*Odorizzi v. Bloomfield School Dist.* (1966) 246 Cal.App.2d 123, 128.) However, under the statute, such fraud must have been "'exercised by or with the connivance of'" the particular defendant against whom rescission is sought. (*Carroll v. Carroll* (1940) 16 Cal.2d 761, 770-771.)

Sellers' operative complaint, which "'delimit[s] the scope of the issues'" and "measures the materiality of the facts tendered" in a summary judgment motion (*FPI Development, Inc. v. Nakashima* (1991) 231 Cal.App.3d 367, 381), alleges that "defendants induced the signature of the subordination agreement . . . by false promises, misrepresentations of material facts, and concealment of material facts." Under the complaint's general allegations, incorporated into the Fifth Cause of Action, sellers alleged "defendants" did not advise sellers the property had been transferred from GBH to Pollards, LLC, "and that therefore, pursuant to the previously executed notes and agreements [sellers] had a right to demand all of their money and if such sum was not paid forthwith had a right to take the property back." Sellers also alleged under the general allegations that they "received written and oral or implied representations" from defendants, "either directly or through their agents . . . both verbally and in writing that the proceeds of the loan which [they] were purporting to subordinate to . . . would be utilized to plan, obtain permits, develop, build, and improve the [property]."

Thus, the complaint alleges two bases for sellers' cause of action for rescission of the subordination agreement: (1) non-disclosure of the transfer from GBH to Pollards, LLC; and (2) misrepresentation as to the use to which the construction loan proceeds would be put. As to the second basis for the claim, additional general allegations are

25

arguably sufficient to state a cause of action for rescission based on fraud. Although not artfully pled, the complaint arguably alleges (a) defendants' knowledge of the falsity of their alleged misrepresentation concerning use of the loan proceeds (i.e., the complaint states "defendants" did not intend to use the funds from the construction loan "solely for the development of the property," but instead intended to use these funds "for other purposes," and "made the promises to [sellers] without any intent of performing them"), (b) intent to induce reliance (i.e., "defendants induced the signature"), (c) justifiable reliance (i.e., sellers were "relying" on defendants' "honesty, credibility, and integrity" and "were reasonable in believing said promises"), and (d) resulting damage (i.e., "United Security Bank foreclosed by power of sale on the [property] . . . making their deed of trust valueless"). (*Odorizzi v. Bloomfield School Dist.*, *supra*, 246 Cal.App.2d at p. 128 [in addition to misrepresentation, complaint must plead "knowledge of falsity, intent to induce reliance, justifiable reliance, and resulting damage"].)

However, on appeal, sellers do not argue a triable issue of material fact exists as to whether United Security Bank fraudulently promised the loan proceeds would be used solely for construction purposes. Indeed, the subordination agreement itself states the opposite. Thus, even had such a promise been made, sellers' reliance thereon would be unjustified as a matter of law. (See *Swiss Property*, *supra*, 60 Cal.App.4th at p. 845 [apparent reliance on fraudulent representations unjustified "in view of the explicit language to the contrary in the CLTA subordination agreement"].)

Instead, sellers argue a triable issue of material fact exists as to the first basis of their rescission cause of action, i.e., non-disclosure of the property transfer. As to this basis of the cause of action, the complaint does not allege an essential element of the cause of action. Nowhere in the complaint do sellers allege they justifiably relied on the alleged non-disclosure in signing the subordination agreement. As we have explained:

26

"The procedure for resolving a summary judgment motion *presupposes* that the pleadings are adequate to put in issue a cause of action or defense thereto. [Citation.] However a pleading may be defective in failing to allege an element of a cause of action or in failing to intelligibly identify a defense thereto. In such a case, the moving party need not address a missing element or, obviously, respond to assertions which are unintelligible or make out no recognizable legal claim. The summary judgment proceeding is thereby necessarily transmuted into a test of the pleadings and the summary judgment motion into a motion for judgment on the pleadings. In these circumstances it has been said that a defendant's 'motion for summary judgment necessarily includes a test of the sufficiency of the complaint and as such is in legal effect a motion for judgment on the pleadings.'" [Citation.]" (*FPI Development, Inc. v. Nakashima*, *supra*, 231 Cal.App.3d at p. 382.) With respect to the first basis for sellers' rescission claim, i.e., alleged non-disclosure of the property transfer, the complaint does not state a cause of action for rescission based on fraud because it omits an essential element of such a cause of action, justifiable reliance.

## IV

### *Typographical Error in the Subordination Agreement*

Sellers further assert there was a triable issue of material fact as to whether they agreed to enter into a subordination agreement with Pollards, LLC when the agreement itself stated it was entered into between sellers and "Pollard LLC." They are mistaken.

"A contract is voidable for mistake only if enforcement would be materially harmful or more onerous to the party seeking avoidance than it would have been had the law or facts been as believed. [Citations.] This is a necessary corollary of the principle that the mistake, whether of law or fact, must materially affect an essential element of the contract. [Citations.] A party seeking to rescind a contract must show that he [or she]

27

had suffered material injury or prejudice although he [or she] need not show pecuniary loss. [Citations.]" (*Guthrie v. Times-Mirror Co.* (1975) 51 Cal.App.3d 879, 886; Civ. Code, §§ 1577, 1578.)

The operative complaint does not allege sellers believed they were entering into the subordination agreement with "Pollard LLC," rather than Pollards, LLC, or the omission of the "s" from Pollards, LLC in drafting the agreement harmed or injured them in any way. Accordingly, as with their previous contention, sellers' complaint omits an essential element of a cause of action for rescission, this time, materiality of the mistake. (*FPI Development, Inc. v. Nakashima*, *supra*, 231 Cal.App.3d at p. 382.)

Nor does sellers' factual showing in the summary judgment proceeding establish a triable issue of material fact. The subordination agreement subordinates sellers' deed of trust to that of United Security Bank. The agreement informs sellers the subordination was a condition precedent to the property owner obtaining a loan from United Security Bank. While the property owner is erroneously designated "Pollard LLC" in the agreement, sellers do not argue, let alone cite to admissible evidence establishing, they relied on the name being "Pollard LLC" rather than Pollards, LLC, such that omission of the "s" materially affects the agreement. In other words, whether the property owner was Pollard LLC or Pollards, LLC, sellers agreed to subordinate their deed of trust to that of United Security Bank to induce the bank to loan money to the property owner. Omission of the "s" from the property owner's name was immaterial to these essential terms.

In sum, we conclude the subordination agreement unconditionally subordinating sellers' lien to that of United Security Bank superseded any prior conditions to such subordination. Accordingly, as in *Swiss Property*, *supra*, 60 Cal.App.4th 839, United Security Bank's lien has priority. Nor are there triable issues of material fact concerning sellers' purported right to rescind the agreement.

# V

## *Negligence*

Sellers' final cognizable claim relating to United Security Bank is that the bank breached duties owed to them in a number of ways, each of which constituted actionable negligence. Not so.

At the outset, we again note "'[t]he function of the pleadings in a motion for summary judgment is to delimit the scope of the issues: the function of the affidavits or declarations is to disclose whether there is any triable issue of fact *within the issues delimited by the pleadings*.' [Citations.]" (*FPI Development, Inc. v. Nakashima*, *supra*, 231 Cal.App.3d at p. 381, italics added.)

Sellers' cause of action for negligence alleges: "In administering the loan from United Security Bank to [GBH] all defendants breached a duty of due care to [sellers] by reason of the fact virtually none of the loan resulted in the construction of improvements and that the defendants had the power to control and/or knowledge of the application of the proceeds of the loan." In their opposition to United Security Bank's motion for summary judgment, sellers argued the existence of triable issues of material fact with respect to a number of additional allegedly negligent acts and omissions. These arguments are repeated on appeal, but shall not be discussed, as they fall outside the issues delimited by the pleadings.

With respect to United Security Bank's alleged duty to oversee distribution of the loan proceeds, *Gill v. Mission Savings & Loan Assn.* (1965) 236 Cal.App.2d 753 (*Gill*) and *Weiss v. Brentwood Savings & Loan Assn.* (1970) 4 Cal.App.3d 738 (*Weiss*) are instructive.

In *Gill*, *supra*, 236 Cal.App.2d 753, as here, the sellers subordinated their deeds of trust to that of the defendant lender, who loaned money to a development company

29

to enable the company to construct improvements on the subject property.  Also like the present case, the sellers sued the lender for negligence, alleging the lender "'carelessly and negligently managed and supervised the distribution of [the construction loan] funds.'"  (*Id*. at p. 755.)  The trial court sustained the lender's demurrer.  The Court of Appeal affirmed, holding the lender owed no duty to the sellers "to exercise ordinary care in managing and supervising the distribution of the funds."  (*Ibid*.)  The court explained:  "At most, the amended complaint supports an inference that [the sellers] and the [development company] agreed that the loaned funds would be used only for such purposes, and that [the lender] had knowledge of this agreement. . . .  [¶]  Nowhere in the first amended complaint does it appear that the [lender] agreed with anyone to manage or supervise distribution of the loaned funds, assumed to do so, actually undertook such, or was required by statutory law or regulation to so manage or supervise.  Nor is there any showing of a voluntarily assumed relationship between [the lender] and [the sellers] from which such an obligation might arise.  [¶]  If [the lender] had no obligation to manage and supervise distribution of the construction funds, obviously, it had no duty to exercise ordinary care in the performance of such an obligation.  [Citation.]"  (*Id*. at pp. 756-757.)

In *Weiss*, *supra*, 4 Cal.App.3d 738, involving the same basic fact pattern as in *Gill*, summary judgment was entered in favor of the lender.  With respect to the sellers' negligence cause of action, the court explained:  "In our case, not only was [the lender] not a participant in [the subordination] transaction, but assuming [the lender] was aware of it, the language of subordination did not limit the use of funds to construction and specifically subordinated 'without regard to the application or use of the proceeds of [the construction] loan or advances insofar as the validity of this subordination is concerned.'  Furthermore it provided that the [sellers] understood such language would be relied upon

30

by subsequent lenders who, but for such reliance, would not otherwise make loans. [Citation.] [¶] From the record before us we are unable to find that [the lender] owed any duty of care to [the sellers] or that [the lender] breached any duty." (*Weiss*, *supra*, 4 Cal.App.3d at pp. 744-745.)

Here too, the subordination agreement informed sellers that United Security Bank "in making disbursements pursuant to [the loan agreement] is under no obligation or duty to, nor has [United Security Bank] represented that it will, see to the application of such proceeds by the person or persons to whom [United Security Bank] disburses such proceeds and any application or use of such proceeds for purposes other than those provided for in such agreement or agreements shall not defeat the subordination herein made in whole or in part," also informed sellers United Security Bank would not make the loan without the subordination agreement, and further warned sellers in all capital letters that a portion of the loan might be expended for purposes other than improvement of the property. As in *Gill*, *supra*, 236 Cal.App.2d 753, and *Weiss*, *supra*, 4 Cal.App.3d 738, we conclude United Security Bank owed no duty to oversee distribution of the loan proceeds. Without a duty, there can be no cause of action for negligence.

## VI

### *Liability of Sauer/Chun Defendants under the Addendum to the Note*

Sellers contend there was a triable issue of material fact as to whether the Sauer/Chun defendants are liable under the addendum to the original note despite the fact the addendum expressly obligates Pollards, LLC to make payments under the note. Not so.

Sellers do not cite to any extrinsic evidence offered in opposition to the summary judgment motion to aid in interpreting either the original note or addendum thereto. Accordingly, the interpretation of these instruments is a question of law. (See *Parsons v.*

31

*Bristol Development Co.* (1965) 62 Cal.2d 861, 865 [it is "solely a judicial function to interpret a written instrument unless the interpretation turns on the credibility of extrinsic evidence"].)

The original note, executed in July 2006, provided GBH would pay sellers $1.54 million with interest, making monthly interest-only payments of $6,500 from July 1, 2007 through June 30, 2011, at which point the entire amount would become due and payable. The note also provided sellers with an option to declare the remaining balance due and payable "in the event of a voluntary sale, transfer or conveyance of all or any portion of the property."

The addendum, executed in August 2007, provided that Pollards, LLC (again erroneously designated as "Pollard, LLC") would make the monthly payments of $6,500 from August 30, 2007, through July 30, 2011, at which point the entire amount would become due and payable. The addendum also provided all other terms and conditions of the original note would remain the same. Sellers personally signed the addendum. On behalf of Pollards, LLC, the addendum was signed by D. Rick Cheney and Larry J. John (managing members of GBH, which was the managing member of Pollards, LLC). Under their signatures, Richard B.D. Chun (managing member of Chun Investments, LLC) and Richard N. Sauer (managing partner of the Sauer Partnership) also signed the addendum. Again, these entities were non-managing members of Pollards, LLC.

Sellers argue, "merely by looking at the addendum one can ascertain there is no physical distinction, physical separation, or physical indication that the only party that would be liable for the addendum would be Pollard a nonexistent LLC." We are not persuaded. As a preliminary matter, aside from referring to "Pollard, LLC" as a nonexistent entity, sellers do not specifically argue the omission of the "s" from Pollards,

32

LLC in the addendum was material to their agreement to execute the addendum. Indeed, sellers' cause of action seeking payment under the note and addendum also seeks payment from Pollards, LLC. Thus, as with the subordination agreement, we conclude the addendum referred to Pollards, LLC.

Turning to the language of the instrument, the addendum plainly states that "Pollard[s], LLC, a California Limited Liability Company will make monthly payments of $6,500 per month." The instrument does *not* state Pollards, LLC *and each of its members*, including non-managing members Chun Investments, LLC and the Sauer Partnership, and also including their respective principals, Richard B.D. Chun and Richard N. Sauer, will make the designated payments. Sellers also argue that if Pollards, LLC was the only entity liable for making the payments under the addendum, then the signatures on behalf of that company's managing member, i.e., D. Rick Cheney and Larry J. John, would have sufficed, and the additional signatures by and on behalf of the Sauer/Chun defendants was not required. While true, sellers do not explain why the existence of redundant signatures on behalf of Pollards, LLC's non-managing members would obligate those non-managing members, *and personally obligate the signatories themselves*, when the language of the instrument clearly indicates it is Pollards, LLC that is agreeing to pay the note.

We conclude, as a matter of law, the Sauer/Chun defendants are not liable under the note and addendum thereto.

## VII

### *Adequate Capitalization of Pollards, LLC*

Sellers also claim there was a triable issue of material fact concerning whether Pollards, LLC was adequately capitalized. Assuming, without deciding, such an issue exists, adequate capitalization is one of several factors relevant to the question of

33

whether Pollards, LLC was the alter ego of the Sauer/Chun defendants. Sellers provide no evidence showing any of the other factors. On this record, as a matter of law, the Sauer/Chun defendants are not liable for Pollards, LLC under an alter ego theory.

"In order to prevail in a cause of action against individual defendants based upon disregard of the corporate form, the plaintiff must plead and prove such a unity of interest and ownership that the separate personalities of the corporation and the individuals do not exist, and that an inequity will result if the corporate entity is treated as the sole actor." (*Vasey v. California Dance Co.* (1977) 70 Cal.App.3d 742, 749.) This "alter ego" theory also applies to limited liability companies such as Pollards, LLC. (See Corp. Code, § 17703.04, subd. (b) ["member of a limited liability company shall be subject to liability under the common law governing alter ego liability"]; see also *Capon v. Monopoly Game LLC* (2011) 193 Cal.App.4th 344, 357, fn. 12.)

"The first requirement for disregarding the corporate entity under the alter ego doctrine—whether there is sufficient unity of interest and ownership that the separate personalities of the individual and the corporation no longer exist—encompasses a series of factors. Among the many factors to be considered in applying the doctrine are one individual's ownership of all stock in a corporation; use of the same office or business location; commingling of funds and other assets of the individual and the corporation; an individual holding out that he [or she] is personally liable for debts of the corporation; identical directors and officers; failure to maintain minutes or adequate corporate records; disregard of corporate formalities; absence of corporate assets and inadequate capitalization; and the use of a corporation as a mere shell, instrumentality or conduit for the business of an individual. [Citation.] This list of factors is not exhaustive, and these

enumerated factors may be considered with others under the particular circumstances of each case." (*Misik v. D'Arco* (2011) 197 Cal.App.4th 1065, 1073.)

Here, the operative complaint alleges the alter ego theory applies not only to the Sauer/Chun defendants, but also to GBH and that company's managing members, and appears to allege all such persons and entities should be treated as alter egos, not only of Pollards, LLC, but also of each other. So pled, it is difficult to discern the facts relied upon to support imposition of alter ego liability with respect to any particular defendant. However, although inartfully drawn, we assume the operative complaint sufficiently alleges the alter ego theory to permit us to read the pleadings together with the factual showings in the summary judgment proceeding in order to determine whether a triable issue of material fact exists. (See *FPI Development, Inc. v. Nakashima*, *supra*, 231 Cal.App.3d at p. 382; see also *Leek v. Cooper* (2011) 194 Cal.App.4th 399, 414-415 [to put alter ego theory at issue for purposes of summary judgment motion, the operative complaint "must allege sufficient facts to show a unity of interest and ownership, and an unjust result if the corporation is treated as the sole actor"].)

With respect to the Sauer/Chun defendants, the operative complaint appears to allege Richard B.D. Chun and Richard N. Sauer "utilized" their respective investment companies, i.e., Chun Investments, LLC and the Sauer Partnership, and through these companies "utilized" Pollards, LLC, "as vehicles to permit such persons and entities to hold themselves out to the world as responsible parties," although "inadequately capitalized," and "have ignored the separateness and identity of [these] entities." The complaint further alleges that "to permit [the Sauer/Chun defendants] to hide behind the formation of fictitious entities would perpetrate a fraud upon creditors in general and on [sellers] in particular and any separateness of said individuals and/or entities should be

ignored as there would be a fraud on creditors and an inequitable result would otherwise occur . . . ."

In support of their motion for summary judgment, the Sauer/Chun defendants presented, with supporting evidence, the following as undisputed material facts: (1) Pollards, LLC has three members: GBH, Chun Investments, LLC, and the Sauer Partnership; (2) both Chun Investments, LLC and the Sauer Partnership made an initial capital contribution of $325,000 to Pollards, LLC, and each has a 16.5 percent ownership interest in the company; (3) GBH made an initial capital contribution of $30,000 to Pollards, LLC and owns the remaining 67 percent of the company; (4) Richard B.D. Chun is the managing member of Chun Investments, LLC, but is not a member of Pollards, LLC; (5) Richard N. Sauer is the general partner of the Sauer Partnership, but is not a member of Pollards, LLC; (6) at no time did Chun Investments, LLC or the Sauer Partnership receive any money from or loan any money to Pollards, LLC; (7) at no time did Chun Investments, LLC or the Sauer Partnership pay for any of Pollards, LLC's debts or liabilities; (8) at no time did either Chun Investments, LLC or the Sauer Partnership have authority to act on behalf of Pollards, LLC or legally bind the company; (9) at no time did either Chun Investments, LLC or the Sauer Partnership attempt to exert power over or manage the business, property, or affairs of Pollards, LLC; (10) at no time did Richard B.D. Chun or Richard N. Sauer, as individuals, contribute money to or invest money in Pollards, LLC; (11) at no time did Richard B.D. Chun or Richard N. Sauer, as individuals, loan money to Pollards, LLC; (12) at no time did Richard B.D. Chun or Richard N. Sauer, as individuals, pay for any of Pollards, LLC's debts or liabilities; (13) at no time did Richard B.D. Chun or Richard N. Sauer, as individuals, receive any payments from Pollards, LLC; (14) at no time did Richard B.D. Chun or Richard N. Sauer, as individuals, have authority to act on behalf of Pollards, LLC or legally bind the

36

company; (15) at no time did Richard B.D. Chun or Richard N. Sauer, as individuals, attempt to exert power over or manage the business, property, or affairs of Pollards, LLC; (16) Chun Investments, LLC, the Sauer Partnership, Richard B.D. Chun, and Richard N. Sauer are not, and have never been, members of GBH; (17) neither Chun Investments, LLC nor Richard B.D. Chun are, or have ever been, partners in the Sauer Partnership; (18) neither the Sauer Partnership nor Richard N. Sauer are, or have ever been, members of Chun Investments, LLC; (19) Pollards, LLC had its own separate bank account with United Security Bank; (20) the Sauer Partnership and Chun Investments, LLC are passive investors in Pollards, LLC; (21) Richard B.D. Chun has never met nor communicated with sellers, either individually, or on behalf of Chun Investments, LLC; (22) Richard N. Sauer met sellers on one occasion after the sale of the property to GBH, making an offer to become partners, buy the property, and develop the property; and (23) no promises were made by Chun Investments, LLC, the Sauer Partnership, Richard B.D. Chun, or Richard N. Sauer at any relevant time.

Sellers admitted most of the foregoing facts were undisputed. Some were disputed without citation to any evidence at all. A few were disputed with citation to sellers' declarations, but even these citations do not support the existence of a dispute.[3] The

---

[3]     For example, sellers disputed that neither Chun Investments, LLC, the Sauer Partnership, Richard B.D. Chun, nor Richard N. Sauer had authority to act on behalf of and/or bind Pollards, LLC, citing to four paragraphs in their declarations. However, these paragraphs simply state: "17. No one advised us of the transfer of the real property from [GBH] to either the non-existent Pollard, LLC or Pollards, LLC. It was not until after we filed our lawsuit that we learned of the details of the transaction. [¶] 18. As more particularly set forth in the request for judicial notice of our attorney . . . Pollard, LLC simply does not exist. [¶] 19. Pollards, LLC was a single asset entity and no one advised us that Pollards, LLC was a single asset entity. [¶] 20. Pollards, LLC had no employees and no one advised us that Pollards, LLC had no employees." These statements have nothing to do with whether Chun Investments, LLC, the Sauer

37

papers opposing a summary judgment motion "shall include a separate statement that responds to each of the material facts contended by the moving party to be undisputed, indicating whether the opposing party agrees or disagrees that those facts are undisputed. The statement also shall set forth plainly and concisely any other material facts that the opposing party contends are disputed. Each material fact contended by the opposing party to be disputed *shall be followed by a reference to the supporting evidence*. Failure to comply with this requirement of a separate statement may constitute a sufficient ground, in the court's discretion, for granting the motion." (Code Civ. Proc., § 437c, subd. (b)(3), italics added.) We therefore consider each of the foregoing facts to be undisputed.

Based on these facts, none of the factors relevant to establishing a unity of interest and ownership is present, with the possible exception of inadequate capitalization. No one individual or entity owned all equity in Pollards, LLC. There is no evidence any of the Sauer/Chun defendants used the same office or business location as Pollards, LLC. Pollards, LLC had its own bank account and there is no evidence funds or other assets were commingled. Nor is there any evidence Richard B.D. Chun or Richard N. Sauer held themselves, or their investment companies, out as liable for Pollards, LLC's debts. None of Pollards, LLC, Chun Investments, LLC, or the Sauer Partnership has identical management. Nor is there any evidence Pollards, LLC disregarded required formalities. Indeed, the undisputed evidence establishes that the Sauer/Chun defendants were passive investors in Pollards, LLC with no power to control the company.

Turning to sellers' argument on appeal, even assuming a factual question exists as to whether Pollards, LLC was adequately capitalized, "'[n]o single factor is

---

Partnership, Richard B.D. Chun, or Richard N. Sauer had authority to act on behalf of Pollards, LLC or legally bind the company.

determinative, and instead a court must examine all the circumstances to determine whether to apply the doctrine.'" (*Zoran Corp. v. Chen* (2010) 185 Cal.App.4th 799, 812.) Here, where there is no evidence of any of the other factors supporting application of the alter ego doctrine, we conclude the Sauer/Chun defendants are not liable for Pollards, LLC under an alter ego theory.

Sellers further assert there were additional triable issues of material fact relevant to the alter ego theory of liability, including "the wrongfulness of the behavior of conveying the property to a nonexistent entity without notice to the lienholders, what portion of the loan went for construction purposes, were [sellers] reasonable in their failure to discover the true facts, what did [sellers] think they were subordinating to, and other similar questions." However, sellers do not explain how these purported factual disputes are relevant to the alter ego theory. Nor do they support this argument with citation to any authority. We therefore consider the argument forfeited. (See *M.P. v. City of Sacramento*, *supra*, 177 Cal.App.4th at p. 134.)

## VIII

### *Tort Liability of the Sauer/Chun Defendants*

Finally, we reject sellers' claim there were triable issues of material fact concerning direct liability of the Sauer/Chun defendants for the torts of promissory fraud and intentional misrepresentation.

Once again, the pleadings delimit the issues that may be raised on summary judgment. (*FPI Development, Inc. v. Nakashima*, *supra*, 231 Cal.App.3d at p. 382.) The operative complaint alleged, "the defendants promised [sellers] to utilize any proceeds from the United Security Bank loan for the benefit of the subject property." It was this purported promise that was alleged to have been "made without any intent to perform." Similarly, the complaint alleged, "the defendants made intentional misrepresentations as

39

to their plans, and as to how they planned to . . . utilize the proceeds of the United Security Bank loan when the true facts were that they intended to induce [sellers] to purportedly subordinate their indebtedness to United Security Bank and utilize the loan from United Security Bank for purposes not related to the subject property." The following undisputed facts establish the Sauer/Chun defendants made no such promise or representation to sellers: Chun had never met sellers and had never communicated orally or in writing with sellers; and Sauer had met sellers on one occasion after the sale of the real property.

While sellers, in response to the Sauer/Chun defendants' separate statement, purported to dispute the fact no promises were made by asserting the signatures on the addendum to the original note constituted a promise, the promissory fraud and intentional misrepresentation causes of action alleged in the complaint are not based on an implied promise to pay the original note, purportedly made by the Sauer/Chun defendants by virtue of their signatures on the addendum to the note. Moreover, we have already concluded these defendants, by signing an addendum *obligating Pollards, LLC to make payments under the note*, did not themselves agree to pay the note. Sellers do not point to any other evidence that these defendants made any promises or representations whatsoever, let alone the purported promise/misrepresentation alleged in the complaint. Accordingly, there can be no direct liability for either promissory fraud or intentional misrepresentation. (See *Rossberg v. Bank of America, N.A.* (2013) 219 Cal.App.4th 1481, 1498 [promissory fraud requires, among other elements, "'a promise made regarding a material fact without any intention of performing'"]; *Chapman v. Skype, Inc.* (2013) 220 Cal.App.4th 217, 230 [intentional misrepresentation requires, among other elements, "a misrepresentation"].)

40

DISPOSITION

The judgments are affirmed.  United Security Bank and the defendants, Richard N. Sauer Family Limited Partnership, Chun Investments LLC, Richard N. Sauer, and Richard B.D. Chun, shall recover their costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1) & (2).)


      HOCH     , J.


We concur:


     BLEASE    , Acting P. J.


     BUTZ    , J.